UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HON. DALE A. DROZD, JUDGE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 18-CR-34-DAD |
| | ) | |
| vs. | ) | JURY TRIAL - DAY 2 |
| | ) | Pages 195 through 235 |
| CYRUS DENNIS BRASWELL, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Fresno, California                    Wednesday, February 13, 2019


REPORTER'S TRANSCRIPT OF PROCEEDINGS



**<u>APPEARANCES OF COUNSEL</u>**:


For the Plaintiff:        United States Attorney's Office
                          BY: **LAURA WITHERS**
                          and **KIRK SHERRIFF**
                          2500 Tulare Street
                          Suite 4401
                          Fresno, California 93721

For the Defendant:        **CYRUS DENNIS BRASWELL**
                          In Pro Per

STANDBY COUNSEL:          Federal Defender's Office
                          BY: **MEGAN HOPKINS**
                          2300 Tulare Street
                          Suite 330
                          Fresno, California 93721

REPORTED BY:  KAREN HOOVEN, RMR, CRR, Official Court Reporter

Proceedings recorded by mechanical stenography, transcript
produced by computer aided transcription.

1    Tuesday, February 12, 2019                    Fresno, California.

2    8:45 a.m.

3           THE CLERK:  Court calls case 1:18-CR-34.  United

4    States versus Cyrus Dennis Braswell.  Jury trial.  Day two.

5           THE COURT:  And we are back in session outside the

6    presence of the jury.  The Court has distributed its final

7    intended jury instruction packet as well as verdict forms.

8           Is there any objection to those instructions or

9    verdict form as distributed?  For the government?

10          MR. SHERIFF:  No, Your Honor.  To neither -- there's

11   no objection.  On instruction 13, we noted that the -- that's

12   the instruction with the specific elements for the 876(c).

13   And it uses the initials for Judge Singleton.  And that was

14   filed publicly that way with initials.  But we would suggest,

15   consistent with the evidence, using James K. Singleton.

16          THE COURT:  All right.  Make that change.  Any other

17   suggested changes?

18          MR. SHERIFF:  None.  That's it, Your Honor.

19          THE COURT:  All right.  We'll make that change in the

20   final version and you'll get another set when the copies are

21   done and ready to be distributed.

22          And Mr. Braswell, do you have any objections to place

23   on the record regarding the Court's final package of jury

24   instructions?

25          And Mr. Braswell again has elected not to participate

1    or to state any objections and has declined to respond to the

2    Court's inquiry.  Given his lack of objection, the replacement

3    of Judge Singleton's full name, James K. Singleton, in place

4    of JKS in instruction number 13 is the only modification the

5    Court will make.

6              Mr. Singleton, I did -- Mr. Singleton.

7              Mr. Braswell, I did explain last night, once again

8    when we recessed, my belief that your stated assessment that

9    the only way that you could preserve issues for appeal was by

10   refusing to participate in the trial and remaining silent when

11   the Court inquires if you wish to make an opening statement,

12   cross-examine witnesses.  And when I ask you, as I will,

13   shortly in front of the jury, whether you wish to present a

14   defense, including whether you wish to testify in your own

15   defense, that you have a right to do if you wish.  But also

16   have a right not to present evidence if that's your decision.

17             I indicated to you that I thought you could, in fact,

18   do all of those things if you wished and still preserve your

19   right to appeal any adverse rulings that you wished to pursue

20   before the Ninth Circuit.  And suggested, as I believe standby

21   counsel has suggested in her written letter to you yesterday

22   that's now part of the record in the case, that you

23   really -- it was in your best interest to reconsider the

24   course that you had set upon in the case of declining to

25   participate or respond.

1           Before I bring the jury in for the morning, I will

2      ask you, sir, whether you have reconsidered and whether you

3      wish to present a defense case, including a defense case that

4      could be based upon your own testimony explaining to the jury

5      your belief that you are not guilty of the charges that have

6      been levied against you for whatever reason that you believe

7      would constitute a valid defense to those charges.

8           And Mr. Braswell has declined to respond to the

9      Court's inquiry.  I can only take that as an indication that

10     Mr. Braswell is committed to pursuing the same strategy that

11     he pursued yesterday, which is to decline to respond and to

12     decline to participate in the trial.

13          As I explained yesterday on the record, from my point

14     of view that is a strategic decision on his part.  I think it

15     is an erroneous strategic decision.  Not one well founded in

16     the law.  But it -- I have no doubt regarding Mr. Braswell's

17     competence.  And I think he has -- well, I don't think, I'm

18     convinced that he's knowingly, intelligently made this

19     decision as part of his defense strategy.

20          As I indicated yesterday, indicated just a moment

21     ago, I think it's a fatally flawed strategy as a matter of law

22     and as a matter of fact.  But it is one that if he wishes to

23     pursue, he is entitled to pursue since he has insisted

24     throughout these proceedings that he wishes to represent

25     himself and only he can represent him.  No one else.

1          Ms. Hopkins, do you want to put something on the

2    record?

3          MS. HOPKINS:  Yes, Your Honor.  I was not present at

4    the initial stages of this case when Mr. Braswell was given

5    the opportunity to represent himself.  And I don't know if the

6    Court conducted a full *Faretta* hearing regarding whether or

7    not he's capable of representing himself.  I would just advise

8    the Court if it hasn't been done, there's an indication based

9    on how the case is proceeding now, that perhaps he's not

10   capable of understanding the procedural posture of the case

11   enough to adequately represent himself.  In which case counsel

12   should be appointed.

13         MS. WITHERS:  Your Honor, if I may.  I was present

14   for that.  And there were not one but two *Faretta* hearings.

15   One in front of Judge Grosjean and one in front of Judge

16   McAuliffe.  Both judges advised the defendant they thought he

17   was making a mistake, but they fully advised him of his right

18   to counsel and he strongly and definitively elected to

19   represent himself.

20         And I might add that the addition of standby counsel

21   was at the insistence of the government and over the stringent

22   objections of Mr. Braswell.  And I believe both Judge Grosjean

23   and Judge McAuliffe were satisfied that the defendant

24   understood that right.

25         THE COURT:  That's my understanding and belief as

1    well.  In addition, I even have a recollection that when Mr.

2    Braswell made his initial appearance before me, after having

3    received the full *Faretta* advisements by the magistrate judges

4    below, that I made another attempt to convince Mr. Braswell

5    that he was making a serious mistake in electing to represent

6    himself and making it very clear to him that I thought that he

7    would be better served if he would allow me to appoint counsel

8    to represent him.  And that with me as well he was quite

9    adamant that he wished to represent himself and that he would

10   not allow anyone else to represent him.

11           So I -- I'm not concerned about the record.  I think

12   it's abundantly clear that Mr. Braswell has been fully

13   advised, is competent and has made the decisions that he's

14   made with full advisement of his rights and after being

15   advised that it would be in his best interest to allow the

16   Court to appoint counsel on his behalf.  But has been adamant

17   in rejecting those pleas and offers and advisements.

18           MS. HOPKINS:  Your Honor, I only raise the issue

19   again because I don't believe that simply a waiver of his

20   right to counsel is sufficient under *Faretta*.  I think the

21   Court must also evaluate whether or not he's capable of

22   understanding the Federal Rules of Criminal Procedure and

23   evidence such that he can present a defense.

24           And based on his position that he must remain silent

25   and not participate in trial in order to preserve his

1    appellate rights, it's clear he does not understand the rules

2    sufficient to represent himself.  In my view.  And so perhaps

3    the Court is correct that this is purely strategic and that he

4    does have a full understanding and is making a decision.  I

5    just have concerns that that may not be the case given how

6    adamant he is that he must remain silent in order to preserve

7    those appellate rights.

8           MS. WITHERS:  I would just note, as Mr. Sherriff did

9    yesterday, that my understanding is that Ms. Hopkins' motion

10   is based entirely on what's been happening in court and not

11   based on any private communications?

12          MS. HOPKINS:  Your Honor, I spoke with Mr. Braswell

13   this morning and he indicated to me that he must remain silent

14   to avoid any waiver of his appellate rights.  I advised him on

15   some strategic options that he might employ to exercise

16   limited intervention in the trial.  And he indicated he could

17   take no action due to his need to preserve his appellate

18   right.

19          THE COURT:  My view of the decision is that this,

20   too, is a strategic ploy being employed by Mr. Braswell.  And

21   even potentially an attempt on his part to create another

22   issue perhaps.  He knows exactly what he's doing.  I have no

23   doubt in any my mind.  And I've seen nothing to indicate, in

24   any way, that he doesn't fully appreciate what he is doing in

25   making the decisions that he's making.  I have no concerns.  I

1   think the record is more than adequate, far more than

2   adequate.

3          And I'm going to proceed and not going to waste any

4   more time than what's already been wasted trying to discuss it

5   with Mr. Braswell as he indicated he doesn't trust anything

6   that I say anyway.  And I'm -- in my view, given the fact that

7   he is fully competent, is making strategic decisions, if I

8   were to remove him and revoke his right to represent himself

9   under these circumstances, I think that could very well be

10  error.

11         He has a right, constitutional right to represent

12  himself.  He's invoked that right.  He's never wavered.  And I

13  think he's done so -- I know he's done so knowingly and

14  intentionally and voluntarily.  And I see no basis upon which

15  I could make the judgment that he's incapable of representing

16  himself and that I should revoke that right and force counsel

17  upon him over his own objection.  So I won't do so.

18         Anything else before we bring the jury in?

19         MS. WITHERS:  Nothing from the government.

20         THE COURT:  All right.

21         MS. HOPKINS:  No, Your Honor.

22         THE COURT:  Mr. Braswell, anything that you wanted to

23  put on the record before we bring the jury?

24         MS. HOPKINS:  Your Honor, I would note I don't

25  believe the parties have stated their appearance.

1          THE COURT:  Go right ahead.

2          MS. WITHERS:  Laura Withers and Kirk Sherriff

3    representing the United States accompanied by FBI Special

4    Agent Deanna Goodman.

5          MS. HOPKINS:  Megan Hopkins as standby counsel for

6    the Court on behalf of the Office for the Federal Defender.

7          THE COURT:  And Mr. Braswell representing yourself;

8    correct?

9          Mr. Braswell has elected not to respond.  But the

10   record should reflect that he is present in court representing

11   himself as he indicated yesterday morning when we began these

12   proceedings.

13         MR. SHERRIFF:  Your Honor, may I make one -- can I

14   ask that the Court note that Mr. Braswell has been alert

15   throughout the entire trial.  He has been paying attention

16   apparently throughout the entire trial.  He's remained silent,

17   but it's clear that he is following -- appears to be following

18   or followed what the witnesses were saying.  Appeared to be

19   paying attention.  Appeared to be hearing what the Court was

20   saying.  He's made a strategic decision not to talk.  But

21   otherwise the Court's observations of him could reflect that

22   he has been alert, attentive and certainly not looking like

23   he's not following anything.

24         THE COURT:  I absolutely agree with everything you've

25   stated on the record, Mr. Sherriff.  And the record should so

1  reflect.  Again, I don't know how more plainly I can state it.

2  There is absolutely no indication whatsoever that Mr. Braswell

3  is not competent to represent himself in these proceedings.

4  Nothing.  As far as I'm concerned.  He has been -- he's been a

5  full and complete participant.  Look at the docket.  I think

6  in the -- at the final pretrial conference, I ruled on, what,

7  24, 25, maybe more motions filed by Mr. Braswell.

8        The record of those proceedings is going to reflect

9  his arguments in support of his motions.  He's a very sharp

10 individual, quite in tune with the arguments that he's

11 advanced in this case.  He's fully and completely engaged in

12 this matter.  He is making, clearly, in my mind, a strategic

13 choice at this point to remain silent and not respond to the

14 Court's inquiry based upon his position that I have somehow

15 deprived him of the ability to present a defense.  Even though

16 I have not.  At least not a defense supported by either the

17 evidence or the law.  He doesn't like that ruling and he's

18 elected to respond in this fashion.  Completely and totally a

19 strategic decision on his part.  I don't know how I can make

20 the record any clearer.  He's alert.

21        Let's bring in the jury.

22        Let me put one more thing on the record.  Ms. Withers

23 or Mr. Sherriff, we're in the process of printing the final

24 instructions.  The only change that we're making is to 13.  So

25 the preliminary packet can be used for purposes of your

1    closing argument?  Because we don't have the copies made yet.

2              MS. WITHERS:  Thank you, Your Honor.  I have it in a

3    PowerPoint form and I made the change that we just made with

4    respect to "JKS," so I think it's entirely consistent with the

5    final packet.

6              THE COURT:  All right.

7              MS. WITHERS:  Thank you.

8              THE COURT:  Then we'll go right into closing

9    argument.  And then I'll have to take a break in order to have

10   the copies ready for the reading of the instructions.

11        (The jury entered the courtroom.)

12             THE COURT:  Let the record reflect that we are back

13   in the presence of the jury.  Good morning, ladies and

14   gentlemen.

15             Mr. Braswell, the prosecution has rested its case.

16   Do you wish to present any evidence at this time?

17             And the record should reflect that Mr. Braswell has

18   declined to respond to the Court's inquiry.

19             I will remind the jury that in my preliminary

20   instructions to you, I did advise you that the defendant, Mr.

21   Braswell, has pleaded not guilty to the charges and is

22   presumed innocent unless and until the government proves the

23   defendant guilty beyond a reasonable doubt.  In addition, the

24   defendant has the right to remain silent and never has to

25   prove innocence or to present any evidence.

1    And I can only interpret Mr. Braswell's silence as

2  indicating that he does not wish to present any evidence and

3  that the defense rests.

4    And does the government wish to present closing

5  argument at this time?

6    MS. WITHERS:  We do, Your Honor.

7    THE COURT:  You may.

8    MS. WITHERS:  Ladies and gentlemen of the jury, good

9  morning.  As my co-counsel Kirk Sherriff told you at the

10  beginning of this trial, my name is Laura Withers.  And it's

11  now my opportunity to talk directly to you -- I promise I will

12  keep it brief -- about the evidence you've seen in this case,

13  the witnesses and the testimony that you've heard.  And put it

14  together into a completed picture for you before you go back

15  into the jury room.

16    The defendant is charged with three counts of mailing

17  threatening communications.  In a moment, Judge Drozd is going

18  to instruct you about what the elements of that offense are.

19  And if for any reason what he tells you differs from what I

20  tell you, his word goes.  But it is relatively

21  self-explanatory.  Mailing threatening communications.  Kind

22  of what it sounds like.

23    So what are the elements this offense.  Are the

24  screens working?  It comes up?  Awesome.

25    The first element is that the defendant knowingly

1    mailed or arranged to have mailed a communication addressed to

2    the Federal District Court, Clerk of Court, containing a

3    threat to injure James K. Singleton, a federal judge.  When

4    you go back into that jury room, you are going to have this

5    handy dandy box of exhibits with you.  This is the box of

6    exhibits that we've been talking about for the last day.

7           You'll have an opportunity to look through them.  To

8    look at the actual communications that we allege the defendant

9    authored and sent.  You'll be able to look at the envelopes

10   that those communications came in.  And you'll see on the

11   front that they are addressed to Federal District Court, Clerk

12   of Court.  You heard testimony from Pisa Suon and from James

13   Johnson that that is where the envelopes eventually ended up,

14   in the clerk's office in the Federal District Court in

15   Anchorage, Alaska.

16          You also heard testimony from Pisa Suon and James

17   Johnson that James K. Singleton is a United States District

18   Judge in Anchorage, Alaska.  He's a federal judge.  You saw

19   that he was invested in 1990.  And you heard testimony that he

20   is still a judge in Anchorage, Alaska today.

21          You also heard that he was the judge in Alaska in

22   1998, when the defendant Cyrus Braswell had a case in front of

23   him.  And the defendant didn't think that he was treated very

24   fairly.  He wasn't happy with the way that case came out.  And

25   so he started writing communications to be filed in that case

1    in front of Judge Singleton, in which he stated that when he

2    gets out of prison, he's going to murder Judge Singleton.

3        I submit to you that a threat to murder is a threat

4    to injure Judge Singleton, a federal judge.  A fact of which

5    the defendant was obviously well aware.

6        You'll have an opportunity to look at those

7    communications, to read that language, to read the words that

8    the defendant wrote.

9        Now, how do you know that those communications were

10   mailed?  You heard from Quinn Harrison about the stamp that

11   you'll see on the back of those envelopes.  When legal mail in

12   Mendota is brought to be sent out in the mail, it's sealed,

13   stamped on the back, it's dated, it goes out that day.  They

14   don't sit on it.

15       You heard testimony from Pisa Suon and James Johnson

16   that those mailings ended up precisely where the defendant

17   addressed them.  You heard from Pisa about that stamp in the

18   upper right-hand corner.  They open the mail, they stamp it.

19   That's the date it's received.  That's the date it was filed

20   in the defendant's case before Judge Singleton.  That's how

21   you know it was mailed.

22       How do you know the defendant mailed it?  Well, look

23   back at that envelope.  You saw at the upper left-hand corner

24   of each of those envelopes, there's a return address.  Cyrus

25   D.A. Braswell, the defendant.  With his register number.  That

1   Marshal number that becomes his BOP number that follows him,

2   that is a unique identifier.  You heard that testimony from

3   James Johnson, from Quinn Harrison.

4        You also heard from Quinn Harrison that when legal

5   mail is brought to be mailed out, they check.  They check that

6   return address with the identification of the person who's

7   handing them that mail.  Their name, their register number.

8   If they don't match, that mail is not getting accepted, not

9   going into the mail and it's not making it to Alaska.

10        And so you can infer, by the fact that each of these

11  communications has a return address for the defendant and

12  ended up in Alaska through the mail, that the defendant must

13  have mailed it.  He must have been the person that presented

14  it to be mailed.  Because otherwise, never gone in the mail,

15  would never have been accepted for mailing.

16        What about the second element?  The communication was

17  transmitted for the purpose of issuing a threat or with

18  knowledge that the communication would be viewed as a threat.

19        That asterisk is there to remind me to tell you that

20  the government is not required to prove that the defendant had

21  the ability to carry out the threat.  We're required to prove

22  that he sent a communication for the purpose of issuing a

23  threat with knowledge that it would be viewed as a threat and

24  that he mailed it.

25        When you go back into the that jury room, you'll be

1   able to read the language that the defendant wrote.  "When I

2   get out of prison, I'm going to murder Judge Singleton."  You,

3   for yourself, can decide whether or not that communication is

4   going to be viewed as a threat on its face.

5          But you also heard from Special Agent Volk that he

6   went to interview the defendant and the defendant admitted

7   everything.  Says, "Yes, I recognize that language.  I wrote

8   it.  I meant it as a threat.  I put it in the mail.  I wanted

9   it to be filed in my case with Judge Singleton.  I wanted

10  Judge Singleton to see it."

11         And when Special Agent Volk said, "What would you do

12  if you were in the room right now with Judge Singleton?"  The

13  defendant said, "I would kill him."  That tells you what the

14  defendant's intent was in sending these communications.  He

15  wasn't joking around.  He wrote it, he meant it, he mailed it,

16  he wanted it to be seen.

17         I submit to you that based upon this evidence and the

18  testimony, the witnesses that you've heard, you should find

19  the defendant guilty on all three counts with which he is

20  charged.

21         Should you do so, there's an additional question for

22  you.  You'll see on the verdict form back in the jury room

23  that you find the defendant guilty on any of those counts,

24  there are two additional questions that we're asking you.  Do

25  you find that the threatening communication was addressed to a

1    United States Judge?  Do you find that it was addressed to an

2    officer or employee of the United States?

3            I submit to you that you should check "yes" to both

4    of those questions.  I'll take the second one first.  The

5    outside of those envelopes is addressed to the Clerk of Court.

6    You heard testimony from Pisa Suon and James Johnson that the

7    Clerk of Court is a position in the courthouse in the District

8    Court in Anchorage, Alaska.  A person holds that position.  A

9    human being holds that position.  And that person is an

10   officer or employee of the United States, a federal officer or

11   employee.  And so the communication on the outside was

12   addressed to that federal officer or employee.

13           But you just don't have to look at the outside of the

14   communication to determine to whom it's addressed.  You can

15   look to the contents.  And in this case, the defendant told

16   Special Agent Volk that he meant for those threats -- "when I

17   get out of prison, I'm going to murder Judge Singleton" -- to

18   be filed in his case with Judge Singleton in Alaska.  He

19   intended for the judge to see it.  That communication was

20   meant for Judge Singleton.

21           He even went so far as to figure out what the judge's

22   address used to be.  Probably thought it was still his address

23   when he wrote it.  He meant for this communication to be seen

24   and read by Judge Singleton.  That's who it was meant for.

25   Judge Singleton, you heard, from Pisa Suon, you heard from

1   James Johnson, is a United States Judge.  And so I submit to

2   you that you should also check "yes" to whether the

3   communication was addressed to a United States Judge.

4        Once you consider the evidence, view the exhibits,

5   consider the witness testimony that you've heard over the past

6   day, I ask that you find the defendant guilty on all three

7   counts and indicate the communications were addressed to both

8   the United States Judge and a federal officer or employee.

9   Thank you.

10        THE COURT:  And Mr. Braswell, do you wish to make a

11   closing argument at this time?

12        And Mr. Braswell has elected not to respond to the

13   Court's inquiry.  I can only interpret that as an indication

14   that he does not wish to make a closing argument.  In light of

15   that, I don't think any rebuttal argument would be

16   appropriate.  But I'll ask.  The government wish to argue

17   anything in rebuttal?

18        MS. WITHERS:  No, Your Honor.

19        THE COURT:  All right.  Ladies and gentlemen, it's

20   going to take me a few moments before I'm ready to read you

21   the jury instructions that will control your deliberations in

22   this case.  I need to make copies.  The instructions have now

23   been finalized, we did that this morning before you came in.

24   But I've got to make enough copies for all of you and that's

25   in the process of being done right now.  I don't think it will

1   take too much longer, but we do need to take a recess so that

2   we can finish that process up and have the instructions back

3   on your chairs when you come back into the courtroom.

4          Some folks like to read along as I read the

5   instructions.  That's fine, you can do so.  Other people say,

6   oh, I want to listen to the Judge read them one time knowing

7   that I will have them when I go back to the jury deliberation

8   room.  And you will each have a copy of the instructions to

9   take into the jury deliberation room with you.  So either way,

10  either listen to me read them or read along with me is fine.

11  All right?

12         We'll take a brief recess.  Please heed the Court's

13  previous admonition.  And as soon as we have those copies

14  available, you'll hear the instructions.

15     (The jury left the courtroom.)

16         THE COURT:  I don't think this will take long, I

17  would think not more than ten minutes or so.

18     (Recess.)

19     (The jury entered the courtroom.)

20         THE COURT:  Members of the jury, now that you have

21  heard all the evidence, it is my duty to instruct you on the

22  law that applies to this case.  It is your duty to weigh and

23  to evaluate all the evidence received in the case and, in that

24  process, to decide the facts.  It is also your duty to apply

25  the law as I give it to you to the facts as you find them,

1  whether you agree with the law or not.

2          You must decide the case solely on the evidence and

3  the law.  Do not allow personal likes or dislikes, sympathy,

4  prejudice, fear or public opinion to influence you.  You

5  should also not be influenced by any person's race, color,

6  religion, national ancestry, gender, sexual orientation,

7  profession, occupation, celebrity, economic circumstances or

8  position in life or in the community.  You will recall that

9  you took an oath promising you to do so at the beginning of

10 the case.

11         You must follow all these instructions and not single

12 out some and ignore others.  They are all important.  Please

13 do not read into these instructions or into anything I may

14 have said or done any suggestion as to what verdict you should

15 return.  That is a matter entirely up to you.

16         The superseding indictment is not evidence.  The

17 defendant has pleaded not guilty to the charges.  The

18 defendant is presumed to be innocent unless and until the

19 government proves the defendant guilty beyond a reasonable

20 doubt.  In addition, the defendant does not have to testify or

21 present any evidence.  The defendant does not have to prove

22 innocence.  The government has the burden of proving every

23 element of the charges beyond a reasonable doubt.

24         A defendant in a criminal case has a constitutional

25 right not to testify.  In arriving at your verdict, the law

1    prohibits you from considering in any manner that the

2    defendant did not testify.

3         Proof beyond a reasonable doubt is proof that leaves

4    you firmly convinced the defendant is guilty.  It is not

5    required that the government prove guilt beyond all possible

6    doubt.  A reasonable doubt is a doubt based upon a reason and

7    common sense and is not based purely on speculation.  It may

8    arise from a careful and impartial consideration of all the

9    evidence or from lack of evidence.

10        If, after a careful and impartial consideration of

11   all the evidence, you are not convinced beyond a reasonable

12   doubt that the defendant is guilty, it is your duty to find

13   the defendant not guilty.  On the other hand, if, after

14   careful and impartial consideration of all the evidence, you

15   are convinced beyond a reasonable doubt that the defendant is

16   guilty, it is your duty to find the defendant guilty.

17        The evidence you are to consider in deciding what the

18   facts are consist of:  One, the sworn testimony of any

19   witness.  Two, the exhibits received in evidence.  And three,

20   any facts to which the parties have stipulated or agreed.

21        In reaching your verdict, you may consider only the

22   testimony and exhibits received in evidence.  The following

23   things are not evidence and you may not consider them in

24   deciding what the facts are.  One, questions, statements,

25   objections and arguments by the lawyers or parties are not

1   evidence unless the defendant made the statement under oath.

2          The lawyers are not witnesses.  Although you must

3   consider a lawyer's questions to understand the answers of a

4   witness, the lawyer's questions are not evidence.  Similarly,

5   what the lawyers have said in their opening statements and

6   their closing arguments and at other times is intended to help

7   you interpret the evidence, but it is not evidence.  If the

8   facts as you remember them differ from the way the lawyers

9   state them, your memory of them controls.

10         Two.  Any testimony that I have excluded, stricken or

11  instructed you to disregard is not evidence.  In addition,

12  some evidence may have been received only for a limited

13  purpose.  When I have instructed you to consider certain

14  evidence in a limited way, you must do so.  Anything you may

15  have seen or heard when court was not in session is not

16  evidence.  You are to decide the case solely on the evidence

17  received at the trial.

18         Evidence may be direct or circumstantial.  Direct

19  evidence is direct proof of a fact, such as testimony by a

20  witness about what that witness personally saw or heard or

21  did.  Circumstantial evidence is indirect evidence.  That is,

22  it is proof of one or more facts from which you can find

23  another fact.  You are not -- you are to consider both direct

24  and circumstantial evidence.  Either can be used to prove any

25  fact.  The law makes no distinction between the weight to be

1   given to either direct or circumstantial evidence.  It is for

2   you to decide how much weight to give to any evidence.

3          You have heard testimony and seen evidence that the

4   defendant was previously convicted of a federal crime and was

5   in custody at certain relevant times.  This evidence was

6   admitted only for limited purposes.

7          You may consider this evidence only for the purpose

8   of deciding whether the defendant:  One, had the state of

9   mind, knowledge or intent necessary to commit the crimes

10  charged in the superseding indictment.  Two, had a motive or

11  the opportunity to commit the acts charged in the superseding

12  indictment.  And three, is the person who committed the crimes

13  charged in the superseding indictment.

14         You may consider this evidence to help you decide

15  whether the defendant mailed or arranged to have mailed the

16  charged communications.  Do not consider this evidence for any

17  other purpose.  Of course, it is for you to determine whether

18  you believe this evidence and, if you do believe it, whether

19  you accept it for the purpose offered.  You may give it such

20  weight as you feel it deserves, but only for the limited

21  purpose that I described to you.

22         The defendant is not on trial for committing these

23  other acts.  You may not consider the evidence of these other

24  acts as a substitute for proof that the defendant committed

25  the crimes charged.  You may not consider this evidence as

1   proof that the defendant has a bad character or any propensity

2   to commit crimes.  Specifically, you may not use this evidence

3   to conclude that because the defendant may have committed the

4   other acts, he must also have committed the acts charged in

5   the superseding indictment.

6          Remember that the defendant is on trial here only for

7   violations of Section 876(c) of Title 18 of the United States

8   Code, mailing threatening communications on or about the dates

9   charged in the superseding indictment, not for these other

10  acts.  Do not return a guilty verdict unless the government

11  proves the crimes charged in the superseding indictment beyond

12  a reasonable doubt.

13         In deciding the facts in this case, you may have to

14  decide which testimony to believe and which testimony not to

15  believe.  You may believe everything a witness says or part of

16  it or none of it.

17         In considering the testimony of any witness, you may

18  take into account:  One, the witness' opportunity and ability

19  to see or hear or know the things testified to.  Two, the

20  witness' memory.  Three, the witness' manner while testifying.

21  Four, the witness' interest in the outcome of the case, if

22  any.  Five, the witness' bias or prejudice, if any.  Six,

23  whether other evidence contradicted the witness' testimony.

24  Seven, the reasonableness of the witness' testimony in light

25  of all the evidence.  And eight, any other factors that bear

1 | on believability.

2 | Sometimes a witness may say something that is not
3 | consistent with something else he or she said.  Sometimes
4 | different witnesses will give different versions of what
5 | happened.  People often forget things or make mistakes in what
6 | they remember.  Also, two people may see the same event but
7 | remember it differently.  You may consider these differences
8 | but do not decide the testimony is untrue just because it
9 | differs from other testimony.

10 | However, if you decide that a witness has
11 | deliberately testified untruthfully about something important,
12 | you may choose not to believe anything that witness said.  On
13 | the other hand, if you think the witness testified
14 | untruthfully about some things but told the truth about
15 | others, you may accept the part you think is true and ignore
16 | the rest.

17 | The weight of the evidence as to a fact does not
18 | necessarily depend on the number of witnesses who testify.
19 | What is important is how believable the witnesses were and how
20 | much weight you think their testimony deserves.

21 | You are here only to determine whether the government
22 | has satisfied its burden of proving that the defendant is
23 | guilty beyond a reasonable doubt of the charges in the
24 | superseding indictment.  The defendant is not on trial for any
25 | conduct or offenses not charged in the superseding indictment.

1       A separate crime is charged against the defendant in

2  each count.  You must decide each count separately.  Your

3  verdict on one count should not control your verdict on any

4  other count.

5       You have heard testimony that the defendant made a

6  statement.  It is for you to decide:  One, whether the

7  defendant made the statement.  And, two, if so, how much

8  weight to give to it.  In making those decisions, you should

9  consider all the evidence about the statement, including the

10  circumstances under which the defendant may have made it.

11       The defendant is charged in Counts One, Two and Three

12  of the superseding indictment with mailing threatening

13  communications in violation of Section 876(c) of Title 18 of

14  the United States Code.  In order for the defendant to be

15  found guilty of that charge, the government must prove each of

16  the following elements beyond a reasonable doubt:

17       First, the defendant knowingly mailed or arranged to

18  have mailed a communication addressed to the Federal District

19  Court, Clerk of Court containing a threat to injure James K.

20  Singleton, a federal judge.

21       Second, each communication was transmitted for the

22  purpose of issuing a threat or with the knowledge that the

23  communication would be viewed as a threat.  The government

24  need not prove that the defendant intended to carry out the

25  threat.

1        An act is done knowingly if the defendant is aware of

2   the act and does not act through ignorance, mistake or

3   accident.  The government is not required to prove that the

4   defendant knew that his acts or omissions were unlawful.  You

5   may consider evidence of the defendant's words, acts or

6   omissions along with all the other evidence in deciding

7   whether the defendant acted knowingly.

8        In determining who a communication is addressed to,

9   you may consider the testimony and evidence in the case,

10  including the directions on the outside of the envelope or the

11  packaging, the salutation line, if any, and the contents of

12  the communication.

13       The indictment charges that the offenses were

14  committed on or about a certain date.  Although it is

15  necessary for the government to prove beyond a reasonable

16  doubt that the offenses were committed on a date reasonably

17  near the dates alleged in those counts of the indictment, it

18  is not necessary for the government to prove that the offenses

19  were committed precisely on the dates charged.

20       Because you must base your verdict only on the

21  evidence received in the case and on these instructions, I

22  remind you that you must not be exposed to any other

23  information about the case or to the issues it involves.

24  Except for discussing the case with your fellow jurors during

25  your deliberations, do not communicate with anyone in any way

1   and do not let anyone else communicate with you in any way

2   about the merits of the case or anything to do with it.

3          This includes discussing the case in person, in

4   writing, by phone or electronic means, via email, text

5   messaging or any internet chatroom, blog, website or other

6   feature.  This applies to communicating with your family

7   members, your employer, the media or press and the people

8   involved in the trial.

9          If you are asked or approached in any way about your

10  jury service or anything about this case, you must respond

11  that you have been ordered not to discuss the matter and to

12  report the contact to the Court.

13         Do not read, watch or listen to any news or media

14  accounts or commentary about the case or anything to do with

15  it.  Do not do any research, such as consulting dictionaries,

16  searching the internet or using other reference materials.

17  And do not make any investigation or in any other way try to

18  learn about the case on your own.

19         The law requires these restrictions to ensure the

20  parties have a fair trial based on the same evidence that each

21  party has had an opportunity to address.  A juror who violates

22  these restrictions jeopardizes the fairness of these

23  proceedings and a mistrial could result that would require the

24  entire trial process to start over.  If any juror is exposed

25  to any outside information, please notify the Court

1   immediately.

2        Some of you have taken notes during the trial.

3   Whether or not you took notes, you should rely on your own

4   memory of what was said.  Notes are only to assist your

5   memory.  You should not be overly influenced by your notes or

6   those of your fellow jurors.  The punishment provided by law

7   for these crimes is for the Court to decide.  You may not

8   consider punishment in deciding whether the government has

9   proved its case against the defendant beyond a reasonable

10  doubt.

11       When you begin your deliberations, elect one member

12  of the jury as your foreperson, who will preside over the

13  deliberations and speak for you here in court.  You will then

14  discuss the case with your fellow jurors to reach agreement,

15  if you can do so.  Your verdict, whether guilty or not guilty,

16  must be unanimous.

17       Each of you must decide the case for yourself, but

18  you should do so only after you have considered all of the

19  evidence, discussed it fully with the other jurors and

20  listened to the views of your fellow jurors.  Do not be afraid

21  to change your opinion if the discussion persuades you that

22  you should do so.  But do not come to a decision simply

23  because other jurors think it is right.  It is important that

24  you attempt to reach a unanimous verdict, but, of course, only

25  if each of you can do so after having made your own

1   conscientious decision.  Do not change an honest belief about

2   the weight and effect of the evidence simply to reach a

3   verdict.

4           Perform these duties fairly and impartially.  Do not

5   allow personal likes or dislikes, sympathy, prejudice, fear or

6   public opinion to influence you.  You should also not be

7   influenced by any person's race, color, religion, national

8   ancestry, gender, sexual orientation, profession, occupation,

9   celebrity, economic circumstances or position in life or in

10  the community.

11          It is your duty as jurors to consult with one another

12  and to deliberate with one another with a view towards

13  reaching an agreement, if you can do so.  During your

14  deliberations, you should not hesitate to re-examine your own

15  views and change your opinion if you become persuaded that it

16  is wrong.

17          A verdict form has been prepared for you.  After you

18  have reached unanimous agreement on a verdict, your foreperson

19  should complete the verdict form according to your

20  deliberations, sign and date it and push the buzzer in the

21  deliberation room and also advise the Court Security Officer

22  that you are ready to return to the courtroom.

23          If it becomes necessary during your deliberations to

24  communicate with me, you may push the buzzer in the

25  deliberation room and send a note through the Court Security

1    Officer signed by any one or more of you.  No member of the

2    jury should ever attempt to communicate with me except by a

3    signed writing.  And I will respond to the jury concerning the

4    case only in writing or here in open court.

5           If you send out a question, I will consult with the

6    parties before answering it.  Which may take some time.  You

7    may continue your deliberations while waiting for the answer

8    to any question.

9           Remember that you are not to tell anyone, including

10   me, how the jury stands numerically or otherwise on any

11   question submitted to you, including the question of the guilt

12   of the defendant, until after you have reached a unanimous

13   verdict or have been discharged.

14          And is there any objection to the jury instructions

15   as read?  For the government?

16          MS. WITHERS:  None from the government.

17          THE COURT:  And Mr. Braswell?

18          And Mr. Braswell has elected not to respond.  The

19   Court takes that as an indication that he has no objection to

20   the instructions as read.

21          Madam clerk, please swear the Court Security Officer.

22      (Court Security Officer sworn. )

23          THE COURT:  And at this time, ladies and gentlemen,

24   except for Juror 013, if I could have you remain here in the

25   courtroom for a moment.  But the other twelve of you, the

1   Court Security Officer, will take you to the jury deliberation

2   room to begin your deliberations.  Jami will bring the

3   exhibits that have been admitted into evidence as well as the

4   verdict form into the room for you in just a few moments.

5         Let me add one other thing.  At this point in the

6   trial, you set your own schedule.  If you wish to take a

7   break, just tell the Court Security Officer.  If you wish to

8   break for lunch, just tell the Court Security Officer.  You

9   have options in that regard which we can let you know if you

10  indicate that you are interested in that.

11        But as long as you set your schedule within reason at

12  this point, that schedule is for you to decide.  Of course I'm

13  the one that gets to decide whether your schedule is

14  reasonable or not, but as long as it's a reasonable schedule,

15  we work with your schedule now.  All right?  You may return to

16  the jury deliberation room.

17        (The jury left the courtroom.)

18        THE COURT:  And Juror 013, if you could remain.

19        And let the record reflect that we are outside the

20  presence of the jurors one through twelve and that only our

21  alternate is present.  Juror 013, as the alternate, I am not

22  going to release you at this time.

23        JUROR SEAT NUMBER THIRTEEN:  Okay.

24        THE COURT:  Because if, for any reason during

25  deliberations, we were to lose a juror, I would then insert

1  you into the jury and instruct the jury that they would need
2  to recommence their deliberations from scratch, from the
3  beginning.  All right?

4          So you have two options.  You're certainly welcome to
5  stay around in the hallway outside the courtroom and wait if
6  you wish.  On the other hand, if you're relatively nearby, you
7  know, within 20, 25 minutes, if you wish to give Jami your
8  cell phone number so that she can contact you if you're
9  needed, she would contact you if you're needed or contact you
10 to let you know that a verdict has been returned by the jury
11 and that you're now free from the Court's previous
12 admonitions.

13         But until that happens, all of the admonitions that
14 I've given you about not discussing the case with anyone or
15 doing any research and the like, all those admonitions
16 continue to apply to you while we're in deliberations.

17         JUROR SEAT NUMBER THIRTEEN:  Okay.

18         THE COURT:  Understood?

19         JUROR SEAT NUMBER THIRTEEN:  Yes.

20         THE COURT:  And then lastly, give your jury badge to
21 Jami so that she can account for it.  You'll get that back if
22 we need to call you back in.  All right?  So just let Jami
23 know what you want to do, whether you want to wait here in the
24 courthouse or whether you'd prefer to leave and be contacted.

25         JUROR SEAT NUMBER THIRTEEN:  Okay.

1      (The alternate juror left the courtroom.)

2          THE COURT:  And let the record reflect we're outside

3  the presence of the jury.  If either party has any question

4  about the exhibits that have been admitted and that are going

5  into the jury room with the jury, let Jami know when she

6  returns to the courtroom.  Otherwise she'll just be taking all

7  of the exhibits that have been admitted into evidence during

8  the trial back to the jury deliberation room along with the

9  verdict form.  All right?

10         Thank you.  The Court will stand in recess.

11     (Recess.)

12         THE COURT:  And let the record reflect we're outside

13  the presence of the jury.  We've received a note, a little

14  hard for me to tell who signed it, so I'll inquire when they

15  come in.  But it's timed at 11:01 and the box is checked

16  indicating the jury has reached a unanimous verdict.  Can you

17  bring in the jury, please.

18         THE CLERK:  I believe it's Juror 026, does that look

19  right?

20         THE COURT:  Could be.  Yes, probably is.

21     (The jury entered the courtroom.)

22         THE COURT:  And let the record reflect that we are

23  back in the presence of the jury.  And Juror 026, are you the

24  foreperson who signed the note?

25         JUROR SEAT NUMBER ELEVEN:  I am, Your Honor.

1        THE COURT:  All right.  And the note indicates that

2   the jury has reached a unanimous verdict.  Is that the case?

3        JUROR SEAT NUMBER ELEVEN:  That is the case.

4        THE COURT:  Could you please hand that verdict to my

5   courtroom deputy.

6        Ladies and gentlemen, my courtroom deputy Jami is now

7   going to publish the verdict.  That is, read it out loud.

8   Please pay special attention as she does so because after the

9   verdict is published, it is possible that you may be polled

10  individually to ask if the verdict as it's been read is your

11  verdict in this case.  All right?

12       Madam clerk, please publish the verdict.

13       THE CLERK:  United States District Court for the

14  Eastern District of California.  United States of America,

15  plaintiff versus Cyrus Dennis Braswell, defendant.  Case

16  number 1:18-CR-34.  Verdict form.

17       Count One:  Mailing threatening communications, 18

18  USC Subsection 876(c), on or about October 27th, 2015.

19       We, the jury, find as to Count One of the superseding

20  indictment that the defendant Cyrus Dennis Braswell is guilty.

21       We, the jury, further find that the threatening

22  communication was addressed to a United States Judge:  Yes.

23       We, the jury, further find that the threatening

24  communication was addressed to an officer or employee of the

25  United States:  Yes.

1      Count Two.  Mailing threatening communications, 18

2   USC Subsection 876(c), on or about December 15th, 2015.

3      We, the jury, find as to Count Two of the superseding

4   indictment that the defendant Cyrus Dennis Braswell is guilty.

5      We, the jury, further find that the threatening

6   communication was addressed to a United States Judge:  Yes.

7      We, the jury, further find that the threatening

8   communication was addressed to an officer or employee of the

9   United States:  Yes.

10      Count Three.  Mailing threatening communications, 18

11   USC Subsection 876(c), on or about August 28th, 2016.

12      We, the jury, find as to Count Three of the

13   superseding indictment that the defendant Cyrus Dennis

14   Braswell is guilty.

15      We, the jury, further find that the threatening

16   communication was addressed to a United States Judge:  Yes.

17      We, the jury, further find that the threatening

18   communication was addressed to an officer or employee of the

19   United States:  Yes.

20      Signed and dated by our foreperson on February 13th,

21   2019.

22      THE COURT:  And does either party request that the

23   jury be polled?  The government?

24      MS. WITHERS:  No, Your Honor.

25      THE COURT:  Mr. Braswell?

1           Mr. Braswell has declined to respond to the Court's

2    inquiry.  Out of an abundance of caution, I am going to poll

3    the jurors and inquire of each of them as to whether the

4    verdict as published constitutes his or her individual

5    verdicts in all respects.

6           Starting at the back row closest to the audience,

7    juror number one, is the verdict as it has been published your

8    individual verdict in all respects?

9           JUROR SEAT NUMBER ONE:  Yes, it is.

10          THE COURT:  Juror number two, same question?

11          JUROR SEAT NUMBER TWO:  Yes.

12          THE COURT:  Juror number three, is the verdict as

13   it's been published your verdict, your individual verdict in

14   all respects?

15          JUROR SEAT NUMBER THREE:  Yes, it is.

16          THE COURT:  Juror number four, same question.

17          JUROR SEAT NUMBER FOUR:  Yes, Your Honor.

18          THE COURT:  Juror number five, is the verdict as it

19   has been published your verdict in all respects?

20          JUROR SEAT NUMBER FIVE:  Yes, it is.

21          THE COURT:  Juror number six, is the verdict as it

22   has been published here in open court your individual verdict

23   in all respects?

24          JUROR SEAT NUMBER SIX:  Yes, it is.

25          THE COURT:  I'm sorry?

1     JUROR SEAT NUMBER SIX:  Yes.

2     THE COURT:  Juror number seven.  Same question.

3     JUROR SEAT NUMBER SEVEN:  Yes, Your Honor.

4     THE COURT:  Juror number eight.  Closest to the

5  audience second row.  Is the verdict as it has been published

6  your verdict in all respects?

7     JUROR SEAT NUMBER EIGHT:  Yes, it is.

8     THE COURT:  Juror number nine, same question.

9     JUROR SEAT NUMBER NINE:  Yes, Your Honor.

10     THE COURT:  Juror number ten.  Is the verdict as it

11  has been read your individual verdict in all respects?

12     JUROR SEAT NUMBER TEN:  Yes, Your Honor.

13     THE COURT:  Juror number 11, same question.

14     JUROR SEAT NUMBER ELEVEN:  Yes.

15     THE COURT:  And juror number 12, is the verdict as it

16  has been published here in open court your individual verdict

17  in all respects?

18     JUROR SEAT NUMBER TWELVE:  Yes.

19     THE COURT:  Madam clerk, you will be directed to file

20  and record the verdict as it has been rendered.

21     Ladies and gentlemen, I want to thank you very much

22  for your time, attention and service.  Our system of justice

23  cannot function without jurors such as yourself who responded

24  to the summons, taken time out of your days.  And even though

25  jury service was inconvenient for some more than others,

nonetheless you've done your duty and participated in our
criminal justice system and in our constitutional form of
democracy in a very real way.  Hopefully we've treated you
well and your jury service was no more inconvenient than
necessary.  But it's very much appreciated.  We could not
function without it.

I started my career as a law clerk for a District
Judge in the same role that Sam works for me.  And the
District Judge I started out working for many years ago always
used to invite jurors back to his chambers at the conclusion
of all trials.  Not to talk about the case, because I cannot
talk about cases that are pending in front of the Court, but
to answer any questions that you might have, give you a look
at the other end of this operation where a great deal, really
the majority of the work of the Court takes place, which is
back in chambers.  As I said, answering questions that you
might have and get any suggestions from you about how we could
make your jury service even more palatable or easier.

Now, on the other hand, I certainly recognize that
we've taken you away from everything you'd otherwise be doing
and that you may very well want to get on the road as quickly
as possible.  So I will take no offense.  But if you do want
to come back to chambers for a brief visit, just stay in the
jury deliberation room for just a couple of minutes.  Sam will
bring anybody who wants to come back to chambers back and I

1   can get your views about how we might improve things and

2   answer questions that you might have.

3           If I don't see you, thank you again very much for

4   your service.  Lastly, you are all excused as is Juror 013,

5   the alternate, from the admonitions that you've previously

6   been provided regarding not discussing the case.

7           Sometimes lawyers like to talk to jurors after trials

8   just to try to get insight into what they could do better in

9   the future.  I know I used to do it as a trial lawyer whenever

10  I got the chance.  Most important thing is it's completely up

11  to you whether you talk to anybody about this case or decline

12  to do so.  And the lawyers in this case are quite

13  professional.  If you indicate politely, if they did want to

14  talk to you, that you would prefer not to, I'm positive that's

15  the last you're going to hear about it.  And you'll be on your

16  way.

17          But again, you're free of the admonition.  You can

18  discuss anything about your jury service that you wish to with

19  anyone you wish to or you can decline to do so.  All right?

20  Thank you again for your service.  You are excused.

21      (The jury left the courtroom.)

22          THE COURT:  And we are outside the presence of the

23  jurors.  The case will be set for sentencing on?

24          THE CLERK:  May 6th, 10 a.m.

25          THE COURT:  That date agreeable?

1          MS. WITHERS:  Works for the government.  Thank you.

2          THE COURT:  Mr. Braswell?

3          Mr. Braswell has chosen not to respond to the Court's

4    inquiry.  Sentencing will be set for May 6th at 10 a.m. in

5    this courtroom.  Matter will be referred to probation for

6    preparation of a presentence report.

7          MS. HOPKINS:  Your Honor, may I ask that standby

8    counsel be relieved for the sentencing phase.  I don't see a

9    benefit we could offer to the Court or to Mr. Braswell during

10   that phase.  I discussed it briefly with the government.  I

11   don't believe they object.

12         THE COURT:  No objection?

13         MS. WITHERS:  No objection.

14         THE COURT:  The Court specially appointed standby

15   counsel is relieved.

16         MS. HOPKINS:  Thank you, Your Honor.

17         THE COURT:  Anything further?

18         MS. WITHERS:  Not from the government.

19         THE COURT:  Mr. Braswell, anything you wish to put on

20   the record?

21         Mr. Braswell has declined to respond.  The Court will

22   stand in recess.

23      (The proceedings were concluded at 11:27 a.m.)

24   ///

25   ///

236

1          I, KAREN HOOVEN, Official Reporter, do hereby certify

2    that the foregoing transcript as true and correct.

3

4    DATED:  31st of July, 2020        /s/  Karen Hooven
                                        KAREN HOOVEN, RMR-CRR
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25